1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Renee Cecala,                          )    No. CV 04-2612-PHX-NVW
                                            )
10              Plaintiff,                   )    **ORDER**
                                            )
11   vs.                                     )
                                            )
12                                           )
     David B. Newman, et al.,               )
13                                           )
                Defendant.                   )
14                                           )

15

16         This court addresses: (1) Defendant Rubinstein's Motion to Dismiss for lack of

17   personal jurisdiction, insufficient service of process, and failure to state a claim upon which

18   relief may be granted (Doc. #29); (2) Defendants Cooperman, Levitt, Winikoff, Lester, and

19   Miller's Motion to Dismiss for lack of personal jurisdiction and failure to state a claim (Doc.

20   #28); and (3) Defendants Newman and Cooperman-Levitt's Motion to Dismiss for failure to

21   state a claim (Doc. #27).

22   **I.     Background**

23         Plaintiff Renee Cecala, a North Carolina resident at the time, contacted David Newman

24   of Cooperman-Levitt, a New York law firm, to discuss potential claims against her employer,

25   NationsBank.  Doc. #3 at ¶11.   After an initial consultation, Cecala retained Cooperman-

26   Levitt in January 1997 to advise her about any employment discrimination claims she had

27   against NationsBank. Doc. #3 at 13. Rubinstein, an associate attorney at Cooperman-Levitt,

28   was assigned to Cecala's case and worked on it between approximately June 1997 and June

1   1998.  Doc. #3 at ¶19, Doc. #29 at 2.  North Carolina law governed Cecala's case.  Doc. #3

2   at 38.  In June 1997, Cecala moved her domicile from North Carolina to Arizona.  Doc. #3

3   at ¶18.  As part of the representation, Rubinstein communicated with Cecala in Arizona by

4   telephone, mail, e-mail, fax, and Federal Express.  Doc. #45, Exhibit 1.  On one occasion,

5   Rubinstein asked Cecala to notarize the NASD Uniform Submission Agreement and a

6   revised Statement of Claim.  *Id.*  In June 1998, Rubinstein ceased working for Cooperman-

7   Levitt.  Doc. #29, Rubinstein affidavit.

8          Defendants Cooperman, Levitt, Winikoff, Lester, and Miller were partners at

9   Cooperman-Levitt.  Cecala alleges that these defendants knew about Newman's sexual

10  relationship with Cecala, they failed to intercede, and they therefore breached ethical duties

11  in New York.  Doc. 46, Exhibit 1.  In addition, she asserts that Cooperman-Levitt put an

12  improper lien on any damages she recovered from NationsBank.  *Id.*

13         In June 1999, Cecala terminated Cooperman-Levitt's representation of her.  Doc. #47,

14  at 4.   In February 2000, Cecala received an adverse arbitration decision, which she

15  unsuccessfully sought to vacate in federal court.  *Id.*  Ultimately, the Fourth Circuit denied

16  Cecala's motion for re-hearing en banc, and she chose not to file a petition of certiorari to the

17  Supreme Court, due November 21, 2002.  *Id.* at 4-5.  On November 21, 2004, Cecala sued

18  all the defendants for legal malpractice, breach of fiduciary duty, and constructive fraud for

19  conduct during the course of their attorney-client relationship.

20         **A.     Personal Jurisdiction**

21                **1.      Legal Standard**

22         A plaintiff has the burden of proving "that jurisdiction is appropriate, but in the

23  absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of

24  jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  Rubinstein and

25  Cecala do not dispute any facts regarding Rubinstein's contacts with her in Arizona.

26  However, Cecala and Cooperman, Levitt, Winikoff, Lester, and Miller disagree about

27  whether those defendants had knowledge of her alleged improper sexual relationship with

28  Newman.  For the purposes of this decision, the court will assume that Cooperman, Levitt,

1   Winikoff, Miller, and Lester knew about the sexual relationship between Cecala and

2   Newman.

3   　　　When a defendant seeks dismissal for lack of personal jurisdiction, a federal court

4   applies the law of the state in which the district court sits.  *See* Fed. R. Civ. P. 4(k)(1)(A).

5   Arizona's long-arm statute allows Arizona courts to assert jurisdiction to the full extent of the

6   Due Process Clause.  Ariz. R. Civ. P. 4.2(a).  Because Arizona's long-arm jurisdictional

7   statute is coextensive with federal due process requirements, "[t]he jurisdictional issue . . .

8   hinges on federal law." *Uberti v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995).

9   Thus, jurisdiction in this case is constrained only by constitutional principles.

10   　　　To sustain personal jurisdiction over a defendant, a plaintiff must show that the

11   defendant has "'minimum contacts' with the relevant forum such that the exercise of

12   jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

13   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)  (citing

14   *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  There are two types of

15   personal jurisdiction: general jurisdiction and specific jurisdiction.  *Id.* at 801-03.  When

16   evaluating either general or specific personal jurisdiction, "the constitutional touchstone

17   remains whether the defendant purposefully established 'minimum contacts' in the forum

18   state."  *Burger King Corp. v. Radzewicz*, 471 U.S. 462, 474 (1985).

19   　　　Cecala has no grounds for general personal jurisdiction over Defendants Rubinstein,

20   Cooperman, Levitt, Winikoff, Lester, and Miller.[1]  Therefore, Cecala must look to specific

21   personal jurisdiction.  The Ninth Circuit established a three-prong test for whether a

22   defendant  has sufficient "minimum contacts" with a state for specific personal jurisdiction

23   over him.  First, "[t]he non-resident defendant must purposefully direct his activities or

24

25

26   　　　[1]Cecala asserts that this court has general personal jurisdiction over Rubinstein
because he engaged in unauthorized practice of law.  That argument is meritless, as
Rubinstein did not engage in unauthorized practice of law in Arizona by communicating with
27   his client in her state of domicile, concerning his representation of her in a state other than
28   Arizona.

1 consummate some transaction with the forum or resident thereof; or perform some act by

2 which he purposefully avails himself of the privilege of conducting activities in the forum,

3 thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802.

4 Second, "the claim must be one which arises out of or relates to the defendant's forum-related

5 activities." *Id.* Third, "the exercise of jurisdiction must comport with fair play and

6 substantial justice, i.e. it must be reasonable." *Id.* The plaintiff bears the burden of satisfying

7 the first two prongs of the test, and then "the burden shifts to the defendant to present a

8 compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

9 ### 2.    Jurisdiction Over Rubinstein

10 Cecala alleges that the following contacts are sufficient to support specific personal

11 jurisdiction over Rubinstein in Arizona: mail sent to her in Arizona; telephone calls to her

12 in Arizona; faxes directed to her in Arizona; e-mails sent to her in Arizona; and a Federal

13 Express package containing the agreement to arbitrate, which she notarized in Arizona.

14 The question before the court is whether communications between an attorney and an

15 out-of-state client satisfy the Due Process Clause's "minimum contacts" requirement. Cecala

16 necessarily asks this court to hold that an  attorney with an out-of-state client is subject to

17 personal jurisdiction in the state in which his client is domiciled.  This contention is in error.

18 The bare existence of an attorney-client relationship for a representation outside the client's

19 state is insufficient for personal jurisdiction over the attorney in the client's state.

20 In *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990),  the Ninth Circuit addressed

21 this very issue–whether the courts of the client's state has personal jurisdiction over an out-

22 of-state attorney-defendant for professional negligence not in the client's state.  The *Sher*

23 clients sued the attorneys and the partnership for legal malpractice and various other torts.

24 *Id.* at 1362.  In deciding whether the court had personal jurisdiction over the partnership, the

25 *Sher* court stated that it "must look to prior negotiations and contemplated future

26 consequences, along with the terms of the contract and the parties' actual course of dealing

27 to determine if the defendant's contracts are *substantial* and not merely random, fortuitous,

28 or attenuated." *Id.* at 1362 (internal quotations omitted) (emphasis in original).  In addition,

- 4 -

1  the court provided that "normal incidents" of representation do not "establish purposeful

2  availment." *Id.* at 1362-63. "Out-of-state legal representation does not establish purposeful

3  availment of the privilege of conducting activities in the forum state, where the law firm is

4  solicited in its home state and takes no affirmative action to promote business within the

5  forum state." *Id.*  The *Sher* court concluded that it lacked personal jurisdiction over the

6  individual attorneys in the partnership even though the attorney-defendants telephoned the

7  client-plaintiffs in California, one partner traveled to California to meet with the clients, they

8  sent mail to the clients in California, and the clients executed a deed of trust on real estate

9  located in California to pay for attorneys' legal services. *Id.* at 1366.  Such conduct by the

10  attorneys did not amount to purposeful availment.

11       In this case, Cecala asserts that Rubinstein's telephone calls, e-mails, and faxes to her,

12  combined with her notarizing in Arizona the agreement to arbitrate in North Carolina, satisfy

13  the purposeful availment requirement. *Sher* holds otherwise.  Cecala does not demonstrate

14  that Cooperman-Levitt or Rubinstein took any "affirmative action to promote business"

15  within Arizona.  Cecala contacted Newman at Cooperman-Levitt, a New York law firm, to

16  represent her in a case governed by North Carolina law while she lived in North Carolina.

17  Cecala moved to Arizona after the attorney-client relationship began.    In addition,

18  Rubinstein has fewer contacts with Arizona than the *Sher* defendants had with California,

19  and those contacts were insufficient to establish that the individual attorneys purposefully

20  availed themselves of California law.  Therefore, Rubinstein did not purposefully avail

21  himself of Arizona law.

22              **3. Jurisdiction Over Cooperman, Levitt, Winikoff, Lester, and Miller**

23       Cecala argues that the following contacts are sufficient for this court to assert specific

24  personal jurisdiction over Cooperman, Levitt, Winikoff, Lester, and Miller: they knew of the

25  sexual relationship between her and Newman; Cooperman-Levitt improperly put a lien on

26  any recovery from NationsBank; and they committed ethical violations in New York because

27  of their failure to act.

28

1    Cecala's claim of Arizona personal jurisdiction over Cooperman, Levitt, Winikoff,

2  Lester, and Miller is weaker than her claim over Rubinstein. Cecala does not provide any

3  examples of these defendants purposefully availing themselves of Arizona law.   They did

4  not work on her employment case.  They did not have any contact with Arizona.  They did

5  not seek out clients in Arizona.  Under *Sher*, an attorney-client relationship is not enough to

6  satisfy specific personal jurisdiction unless there are "substantial" contacts with the forum

7  state.  Such contacts are not present here.

8    Therefore, this court lacks personal jurisdiction over Defendants Rubinstein,

9  Cooperman, Levitt, Winikoff, Lester, and Miller without violating their due process rights.

10  In addition, the court determines pursuant to Rule 54(b), Fed. R. Civ. P., that there is no just

11  reason for delay in entering final judgment of dismissal of these six defendants.  Cecala's

12  case against Defendants Cooperman-Levitt and Newman could continue for a lengthy time,

13  and these defendants should not have to monitor these proceedings for what could be a long

14  time before obtaining repose.  Moreover, the legal grounds upon which these defendants are

15  entitled to dismissal are independent of the issues between the remaining parties.

16    It is unnecessary to decide Rubinstein's defense of insufficient service of process or

17  Rubinstein, Levitt, Winikoff, Lester, and Miller's motion for dismissal for failure to state a

18  claim upon which relief can be granted.

19    **B.    Statute of Limitations**

20    Defendants Newman and Cooperman-Levitt argue that Cecala fails to state a claim

21  because all of her claims are barred by Arizona's statute of limitations.   The statute of

22  limitations is an affirmative defense, not a plaintiff's pleading requirement. *Wyatt v. Terhune*,

23  315 F.3d 1108, 1117 (9th Cir. 2003).  A defendant may raise the statute of limitations in a

24  motion to dismiss "if the running of the statute is apparent from the face of the complaint."

25  *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n.1 (9th Cir. 1987).

26    Cecala's complaint does not establish that her claims are barred by the statute of

27  limitations, but she asks the court to take judicial notice of the fact that she brought an action

28  to vacate the arbitration award in federal court pursuant to 9 U.S.C. § 10.   *Cecala v.*

1  *NationsBank Corp. et al.*, No. 3:00-mc-00039 (D. N.C. Apr. 4, 2001) (bringing a motion to

2  vacate the arbitration award in the Eastern District of North Carolina);  *Cecala v.*

3  *NationsBank Corp.*, 40 Fed. Appx. 795, 796 (4th Cir. 2002) (upholding the district court's

4  decision to deny Cecala's motion to vacate the arbitration award).  Defendants do not object

5  to the court taking judicial notice of the district and circuit court decisions, so this court

6  possesses the necessary facts, between Cecala's complaint and the two cases of which the

7  court takes judicial notice, to pose and to decide the narrow question of when Cecala's action

8  for legal malpractice accrued and therefore the limitations period commenced.

9        On this state of the pleadings and the judicially noticed procedural facts, the court can

10  determine whether *Amfac*'s accrual rule for legal malpractice committed during litigation also

11  applies to legal malpractice arising in connection with arbitration.  If the *Amfac* rule does not

12  apply, Cecala's legal malpractice claim accrued at the time of the negligence, subject to

13  possible tolling by other events.  None of the other statute of limitations issues that

14  defendants urge are properly presented in this Motion to Dismiss.

15        **1.        Discussion**

16        In 1983, the Arizona courts addressed when the statute of limitations begins to run in

17  an action for legal malpractice committed in litigation.  *See generally Amfac Distrib. Corp.*

18  *v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983) ("*Amfac I*");  *Amfac Distrib. Corp. v. Miller*,

19  138 Ariz. 155, 673 P.2d 795 (Ariz. Ct. App. 1983) ("*Amfac II*"). In *Amfac I*, the Arizona

20  Supreme Court concluded that "in legal malpractice cases, the injury or damaging effect on

21  the unsuccessful party is not ascertainable until the appellate process is completed or is

22  waived by a failure to appeal."  138 Ariz. at 154, 673 P.2d at 793.  The Arizona appellate

23  court articulated several reasons for this holding.  First, without a final judgment, "the

24  element of injury or damage remains speculative and remote . . . ."  *Amfac II*, 138 Ariz. at

25  156, 673 P.2d at 796.  Second, clients may not be able to gauge whether an attorney has

26  committed malpractice until the case's conclusion.  *Id.* at 156, 673 P.2d at 796.  Third,

27  requiring a client to constantly second-guess his or her attorney's actions would impair the

28

1    attorney-client relationship, a relationship based on trust and confidence.  *Id.* at 156-57, 673

2    P.2d at 796-97.

3           More recently, the Arizona Supreme Court extended *Amfac* to causes of action for

4    legal malpractice in the course of criminal litigation.  *Glaze v. Larsen*, 207 Ariz. 26, 27, 83

5    P.3d 26, 27 (2004).  The *Glaze* court determined that *Amfac*'s policy reasons do apply and

6    that a claim against an attorney for malpractice occurring during the course of criminal

7    proceedings "does not accrue until the complete termination of the criminal proceedings."

8    *Id.* at 32, 83 P.3d at 32.  The court reiterated the principles in *Amfac II* and articulated two

9    related reasons for extending *Amfac*.  First, requiring plaintiffs to commence legal

10   malpractice actions at the point that they became aware of their attorney's negligence would

11   frequently force plaintiffs to seek out new counsel in the midst of litigation, further impairing

12   the attorney-client relationship.  *Id.* at 30, 83 P.3d at 30.  Second, the *Amfac* rule promotes

13   judicial efficiency because otherwise, courts might be deciding a legal malpractice case while

14   the initial litigation is pending on appeal.  *Id.* at 30, 83 P.3d at 30.

15          While different rules govern arbitration proceedings and appeals, the same policy

16   reasons cited in *Amfac* and *Glaze* apply to legal malpractice claims stemming from negligent

17   representation in connection with arbitration.  Until judicial review is exhausted or waived,

18   the injury is remote and speculative.  Even though vacating an arbitration agreement may

19   prove more difficult than overturning a lower court's decision, the procedure is available and

20   a plaintiff might succeed.  Likelihood of success should not be a factor in determining

21   whether *Amfac* applies to arbitration proceedings any more than it is in a judicially litigated

22   case.  In addition, the attorney-client relationship could be harmed by commencing the statute

23   at the time the negligence occurred in the arbitration proceedings.  Finally, the *Amfac* accrual

24   rule promotes judicial efficiency and provides litigants with a bright-line rule.  As in *Glaze*,

25   to commence the running of the limitations period for a legal malpractice action at the time

26   of the negligence could compel the dilemma of a lower court deciding the malpractice issue

27   while the reviewing court has yet to uphold the underlying decision.

28

1      The court concludes that the Arizona Supreme Court would apply the *Amfac* accrual

2   rule to legal practice in arbitration proceedings.  Therefore, accrual of a legal malpractice

3   claim arising in arbitration begins when the judicial review of the arbitration award is

4   concluded and the "appellate process is completed or is waived by a failure to appeal."

5   *Amfac I*, 138 Ariz. at 153; 673 P.2d at 793.

6      **C.     Rule 8(a)(2)**

7      Rule 8(a)(2) provides that a complaint contain "a short and plain statement of the

8   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Cecala filed her

9   ninety-two page amended complaint without an attorney. However, she is now represented

10  by counsel, and her complaint needs to conform to Rule 8(a)(2)'s requirements.  At oral

11  argument, Cecala's attorney informed the court that Cecala would submit a second amended

12  complaint.   Therefore, on its own initiative, the court will dismiss her first amended

13  complaint (Doc. #3) for failure to comply with Rule 8(a)(2) with leave to amend in

14  conformance with that rule.

15     IT IS THEREFORE ORDERED that Defendant Rubinstein's Motion to Dismiss for

16  Lack of Personal Jurisdiction (Doc. #29) is granted.

17     IT IS FURTHER ORDERED that Defendant Cooperman, Levitt, Winikoff, Lester,

18  and Miller's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #28) is granted. In

19  addition, the court determines pursuant to Rule 54(b), Fed. R. Civ. P., that there is no just

20  reason for delay in entering final judgment of dismissal of these six defendants.

21     IT IS FURTHER ORDERED that the clerk is directed to enter final judgment

22  dismissing this action without prejudice as against Defendants Rubinstein, Cooperman,

23  Levitt, Lester, Winikoff, and Miller for lack of personal jurisdiction.

24     IT IS FURTHER ORDERED that Defendant Newman and Cooperman-Levitt's

25  Motion to Dismiss (Doc. #27) is denied on the merits as to the time of commencement of the

26  negligence claim and without deciding the merits of any other limitations issues.

27  / / /

28  / / /

1      IT IS FURTHER ORDERED that Plaintiff's Amended Complaint is dismissed for

2   failure to comply with Rule 8(a)(2) with leave to file a further amended complaint by

3   October 26, 2005.

4      DATED this 11th day of October, 2005.

5

6

7   _____

                                Neil V. Wake
8                         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28