**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Cecala, | No. CV 04-02612-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| David. B. Newman; Cooperman Levitt Winikoff Lester & Newman, P.C., | |
| Defendants. | |

The court has before it Plaintiff Renee Cecala ("Cecala's") Motion for Reconsideration and Related Relief (doc. # 283). Cecala's Motion will be denied. The Response (doc. # 288) has been allowed and treated as a fresh motion for summary judgment and will be granted for the reasons set forth below.

**I.     Background**

This is another chapter in the long-running legal malpractice dispute between Renee Cecala and her former lawyer, David B. Newman ("Newman"), and her former New York law firm, Cooperman Levitt Winikoff & Newman ("Cooperman Levitt") (collectively, "Newman").[1] On May 2, 2007, the court granted a defense motion for summary judgment

---

[1] Cecala's malpractice claims arise out of Newman's handling of an employment discrimination dispute between Cecala and her former employer, NationsBank. (Doc. # 254 at 1-5.) Cecala worked for NationsBank from June 1994 until March 1997. (*Id*.) Newman represented Cecala in arbitration proceedings against NationsBank from September 1997, until June 21, 1999, when Cecala formally discharged him under disputed circumstances. (*Id*.) The arbitrators rendered their award on February 10, 2000, finding in favor of

1 disposing of all Cecala's claims for relief. (Doc. # 254.) The court determined that: 1) Cecala has not made a prima facie case of negligent supervision against Cooperman Levitt (Count IV) because she failed to provide any evidence of a legal duty or injury caused by the breach of that duty; 2) Cecala's claims for non-litigation breach of fiduciary duty (Count II), and intentional infliction of emotional distress (Count III), are out-of-time under A.R.S. § 12-542, and tolling of the statute of limitations is not available for "unsound mind" or for any other reason; 3) Cecala has not made a prima facie case for attorney negligence (Count I), or litigation-injury fiduciary breach (Count II), because she failed to present any evidence from which a reasonable juror could conclude that, but for Newman's misconduct, Cecala should have won her arbitration against NationsBank; and 4) Newman's failure to assert a Title VII retaliation claim during arbitration (Count I) was not negligent, as a matter of law, because Cecala did not suffer economic injury worthy of the expense of litigation, and the loss of an opportunity to assert a theoretically viable but economically futile claim falls short of the damages required by settled legal malpractice claim. (*Id.*) Final judgment in favor of Newman and Cooperman Levitt was entered on June 1, 2007. (Doc. # 278.)

On June 15, 2007, Cecala, appearing pro se, filed a timely "Motion for Reconsideration and Related Relief" in which she alleged many factual and legal errors. (Doc. # 283.) The court deemed Cecala's Motion for Reconsideration to be a timely motion for a new trial under Rule 59(a) and a Rule 59(e) motion in light of the final, appealable judgment in this case. (Doc. # 284 at 1.) Most of Cecala's contentions did not call for further response. (*Id.* at 4.) However, the court in its discretion reopened the proceedings to permit a fresh request for, and opposition to, summary judgment against 1) Cecala's claim of negligent supervision against Cooperman Levitt and 2) Cecala's claim of negligent failure

---

NationsBank on all claims. Cecala filed a state court action against Newman and Cooperman Levitt in 2003, which case was subsequently dismissed for lack of prosecution. (*Id.*) Cecala filed anew after retaining counsel in November 2004. (Doc. # 1.) Plaintiff's counsel was allowed to withdraw from representation for non-payment of fees after the court granted summary judgment on all Cecala's claims. (Doc. # 271.)

- 2 -

to plead Title VII retaliation. (*Id.* at 4.) The court reopened briefing and evidence from both partes on these issues, and set a briefing schedule. (*Id.* at 4.) The filing deadlines were subsequently extended, on multiple occasions, to accommodate Cecala's requests. (Doc. ## 291, 295, 299.)

These proceedings have in effect granted Newman and Cooperman Levitt an opportunity to make, and Cecala the opportunity to respond to, a fresh motion for summary judgment on the issues of negligent supervision and negligent failure to plead. The court now addresses those matters based on the briefing and evidence, including the new evidence.

**II.     Cecala's Over-Length Reply**

Cecala's Reply consists of 38 pages in two documents filed on separate dates. (Doc. ## 300, 301.)[2] The court will consider the relevant portions of Cecala's over-length Reply briefs, and will disregard the sections that attempt to reopen summary judgment proceedings on grounds not authorized by the court.[3] Cecala has also submitted a 57-page Statement of Facts together with 162 exhibits in four bound volumes. Most of this evidence is irrelevant and repetitive. Cecala's Statement of Facts does not comply with Local Rule LRCiv 56.1(a), but is rather an unfocused summary of discovery.

**III.    Summary Judgment Is Warranted on the Claim of Negligent Supervision**

    **A.     Cecala's Allegations**

Cecala alleges that the law firm of Cooperman Levitt "breached its duty of supervision" as well as "applicable attorney ethical rules" by failing to detect Newman's sexualization of the attorney-client relationship. (Doc. # 67 at 35.) Cecala elaborates upon

---

[2]On August 23, 2007, Cecala filed a 29-page Reply brief addressing the issue of Cooperman Levitt's negligent supervision. (Doc. # 300.) On August 27, 2007, by permission of the court (doc. # 299), Cecala filed a nine-page Reply addressing the second ground for reopening. (Doc. # 301.)

[3]Cecala's memoranda (Doc. ## 283, 300, 301) misstate the proceedings on several occasions. The court makes no attempt to correct those misstatements here. Instead, the court focuses only upon the merits of Newman's and Cooperman Levitt's fresh motion for summary judgment and the arguments and evidence submitted by Cecala in response thereto.

1 the theme in her Rule 59 Motion, contending that Cooperman Levitt "should have acted to
2 detect and investigate warning signs and risks to Cecala of which they were aware and
3 should have been aware." (Doc. # 300 at 27.) Among the "warning signs" identified by
4 Cecala as sufficient to place the law firm on notice of Newman's predatory, quid pro quo
5 sexual relationship are 1) Cecala's unpaid legal fees, which grew from $10,000 to as much
6 as $100,000; 2) a lack of correlation between the amount of time Newman spent on Cecala's
7 case, including travel and telephone calls, and the number of hours billed to Cecala's
8 account; 3) Newman's frequent trips to Arizona to prepare for arbitration when his client
9 maintained a temporary residence in New York City; 4) Newman's failure to request
10 reimbursement for hotel stays in Arizona; and 5) the filing of a client memo by Newman in
11 which he detailed his client's psychological distress.[4] (*Id*. at 21-26.)  Having been placed
12 on notice of Newman's improper sexual relationship with a client of the firm, Cecala faults
13 Cooperman Levitt for failing to mitigate the "reasonably foreseeable" results of that
14 relationship, including "emotional distress[,] . . . incompe[tent] . . . counsel [and] advocacy,
15 . . . excessive [client] responsibilities in prosecuting [Cecala's] arbitration case[,] . . . and
16 clandestine abuse which . . . changed Cecala from capable and competent, to helpless and
17 dependent[,] . . . and will affect Cecala for the rest of her life." (*Id*. at 28.)  "Cooperman
18 Levitt had notice through at least two of its partners that Cecala was in despair and in legal
19 and personal danger. They wilfully took no action to serve or protect her interests, they
20 remained silent, and served the firm's interests," Cecala avers. (*Id*. at 25.)

21       Cecala seeks to hold Cooperman Levitt liable for the same psychological and
22 litigation injuries that form the basis of her claims against lawyer Newman. Newman
23 allegedly caused Cecala emotional and pecuniary harm by violating the applicable standards
24 of care and conduct. (Doc. # 67 at 23-34.) Cooperman Levitt's culpability flows not from
25 any affirmative misconduct but rather from its alleged nonfeasance. (*Id*. at 35.) Faced with

---

[4] Cecala does not support these allegations with any specific evidence from her Statement of Facts or otherwise.

- 4 -

1 overwhelming evidence of Newman's improper relationship, Cecala contends that the law
2 firm closed its eyes to the danger to protect its own interests, thereby facilitating the injuries
3 to Cecala's emotional well being and to her employment discrimination case.

4 Cecala views the claim of negligent supervision as an "independent count" that stands
5 free of her claims against Newman. (Doc. # 300 at 9.) But she fails to appreciate that the
6 psychological and litigation injuries for which relief is sought are the same under *all* her
7 theories of recovery. The derivative nature of Cecala's claim for negligent supervision is
8 confirmed by the Second Amended Complaint, where Cecala alleges, "Defendant
9 Cooperman Levitt's failure to exercise reasonable care in the supervision of defendant
10 Newman was a direct and proximate cause of plaintiff's damages, as described above."
11 (Doc. # 67 at 38 (referring to the psychological and pecuniary damages caused by Newman's
12 sexualization of the attorney-client relationship).).

13 Cecala's derivative negligence claim is properly disposed of on summary judgment.
14 For if Newman was not liable for Cecala's emotional or litigation injuries as a matter of law,
15 then Newman's law firm cannot be liable for them, either. To see why, the negligent
16 supervision claim must be bifurcated into its "non-litigation injury" and "litigation injury"
17 components. (Doc. # 254 at 23-24 (same for claim of "Breach of Fiduciary Duty").) Each
18 part is discussed below.

19 **B.     Cecala's Non-Litigation Negligent Supervision Claim Is Time-Barred**

20 Cecala's claim of non-litigation negligent supervision is barred by Arizona's two-year
21 statute of limitations, A.R.S. § 12-542. The damages from Cecala's "emotional distress" and
22 life-altering "clandestine abuse," allegedly caused by Newman but facilitated by Cooperman
23 Levitt's failure to supervise Newman, were fixed on June 21, 1999, the date Cecala
24 discharged her lawyer and her New York law firm. (Doc. # 300 at 28.) Under Arizona's
25 "discovery rule," Cecala's cause of action for non-litigation negligent supervision, like her
26 related claims for intentional infliction of emotional distress and non-litigation fiduciary
27 breach, "accrued" no later than June 21, 1999, the date Cecala discharged her lawyer and her
28 New York law firm. (Doc. # 254 at 23.) *Amfac Distrib. Corp. v. Miller*, 138 Ariz. 152, 153-

- 5 -

54, 673 P.2d 792, 794 (1983), and its progeny do not apply because Cecala's emotional damages are not predicated upon the adverse decision of the arbitral tribunal. Tolling under Arizona's "unsound mind" exception is not warranted because Cecala did the ultimate thing the unsound mind exception aims to prove she could not do: pursue litigation. (Doc. # 254 at 23-39.) Therefore, Cecala's claim of non-litigation negligent supervision was out-of-time by three years and five months when filed on November 21, 2004, and summary judgment is properly entered on this basis.

The court did not expressly rule against Cecala's claim of non-litigation negligent supervision on statute of limitations grounds. (Doc. # 254 at 19-21.) This was an oversight on the court's part. In his Motion for Summary Judgment, Newman observed, "The claim that the Cooperman Levitt firm negligently failed to detect and prevent or stop the sexual relationship (pled as a negligent supervision claim) is a negligence claim subject to the two year statute of limitations in [A.R.S.] § 12-542." (Doc. # 171 at 8.) Newman argued, "All claims, however denominated, should be dismissed [on statute of limitations grounds]. The claim Mr. Newman engaged in improper sexual relations with Ms. Cecala, a claim which [is not tolled], is time barred. So too is the claim the law firm negligently failed to detect and stop the alleged relationship." (*Id.* at 7-8.) Cecala was aware of and responded to Newman's argument in the original summary judgment proceedings. (Doc. # 193 at 5 ("The Statute of Limitations Does Not Bar All or Any of Plaintiff's Claims as a Matter of Law.").) Cooperman Levitt is entitled to summary judgment on the psychological component of Cecala's negligent supervision claim on the basis of A.R.S. § 12-542.

### C. Cecala's Litigation-Injury Negligent Supervision Claim Fails for Lack of Causation Evidence

The court granted summary judgment on Cecala's claim of litigation-injury negligent supervision because Cecala failed to adduce any evidence of the standard of care from which Cooperman Levitt was alleged to have violated, and because she failed to produce any evidence tending to show that, but for the breach of the "duty of supervision," Cooperman Levitt would have detected and would have stopped the inappropriate relationship between

Newman and his client, thereby avoiding the prejudice to Cecala's case. (Doc. # 254 at 19-21.)

In her Rule 59 Motion, Cecala observes, correctly, that Newman did not challenge the sufficiency of the evidence underpinning her claim of litigation-injury negligent supervision. (Doc. # 283 at 18.) Footnote four of Newman's Motion for Summary Judgment states:

> The claim the Cooperman Levitt firm negligently supervised Mr. Newman is subject to attack on the additional bases that Ms. Cecala has failed to prove some ascertainable standard of care the firm deviated from, and from a lack of proof that the firm would have detected and stopped the inappropriate relationship even if it had adhered to the non-existent standard. This motion does not raise those issues. This motion is instead limited to the argument that the claim that the law firm negligently failed to discover and prevent the alleged sexual relationship is similarly time barred.

(Doc. # 171 at 8 n.4.) The court understood from Newman's papers and statements at oral argument that Newman was putting Cecala to her proof of causation on all her claims for relief. (*E.g.*, *id*. at 12 ("[Cecala] and her lawyers are on notice that we are putting her to her *Celotex* burden as to all theories.").) The court erred when it dismissed Cecala's claim for litigation-injury negligent supervision for failure to produce evidence sufficient to create a triable issue of fact.

However, in his Response to Cecala's Rule 59 Motion, and as permitted by the June 19, 2007 Order, Cooperman Levitt put Cecala to her proof on the issue of litigation loss from negligent supervision by contending that Cecala "lacks evidence [of causation] sufficient to send her claim to a jury." (Doc. # 277 at 6.) Cooperman Levitt argues that Cecala "makes no effort [in her Rule 59 Motion] to demonstrate that she could have created a triable issue" for litigation-injury negligent supervision. (*Id*.) If after further briefing and opportunity to present evidence, Cecala still cannot link her allegation of law firm negligence to the loss in the arbitral forum, then summary judgment is proper against her.

Cecala responded to these arguments with 29 pages of legal argumentation, a 57 page Statement of Facts, and 162 exhibits. The court has reviewed all of the evidence actually discussed by Cecala in the pertinent sections of her Rule 59 memoranda. (Doc. ## 283, 300.) There is nothing in this record, or in the underlying summary judgment record, from which

- 7 -

a fair-minded jury could reasonably conclude that, but for Cooperman Levitt's negligent supervision, Cecala should have prevailed against NationsBank at arbitration. Therefore, summary judgment is now appropriate on this claim.

The evidence and expert testimony discussed by Cecala in her Reply suggests only that the law firm may have breached an applicable standard of care. (Doc. # 300.) The court will assume, for purposes of discussion, that Cooperman Levitt owed Cecala an affirmative "duty to supervise" Newman, and that the firm breached the standard of care on these facts. However, Cecala fails to make a case even under this assumption. She offers no evidence, whether in her Rule 59 memoranda or in her original summary judgment papers, tending to show that Cecala should have prevailed against NationsBank if Cooperman Levitt had supervised lawyer Newman. She suggests only that, but for Cooperman Levitt's nonfeasance, Cecala would have been represented by a different though unnamed attorney who, with the benefit of unspecified evidence, a background in employment law, and a punctilious attention to legal ethics, *might* have led her to victory against NationsBank. (Doc. # 300 at 15.)

This argument suffers from the same fundamental misunderstanding of settled litigation malpractice doctrine that has plagued Cecala's case from its inception. Cecala is merely speculating about her chances of success with more effective representation, and this is insufficient, as a matter of law, to make a case for legal malpractice. *Phillips v. Clancy*, 152 Ariz. 415, 418, 421, 733 P.2d 300, 303, 357-58 (Ct. App. 1986.) (the plaintiff must prove that but for the negligence, she would have been successful in the prosecution of the original suit; the trier or fact determines what the result "*should* have been," not what it "could have been" ) (emphasis in original); *Purcell v. Zimbelman*, 18 Ariz. App. 75, 500 P.2d 335 (Ct. App. 1972) (to prove "but-for" causation, the plaintiff must show that causation by the defendant's act or omission is reasonably likely, not merely possible); *Kelly v. United States*, 924 F.2d 355, 357-58 (1st Cir. 1991) (In the precincts patrolled by Rule 56, "Proof based on arrant speculation, optimistic surmise or farfetched inference will not suffice.").

1    The court did not expressly link its discussion of Cecala's evidence of loss causation,
2  (doc. # 254 at 39-58), to its adjudication of Cecala's claim for litigation-injury negligent
3  supervision (*id.* at 18-20). However, the only non-time-barred actionable harm that Cecala
4  claims that she suffered from Cooperman Levitt's negligent supervision was the loss of her
5  case against NationsBank. Cecala offers no additional proof of loss causation in her Rule 59
6  papers. Therefore, in disposing of Cecala's claims for attorney negligence and litigation-
7  injury fiduciary breach, the court necessarily disposed of the derivative claim for litigation-
8  injury negligent supervision as well. If Newman's sexualization of the attorney-client
9  relationship and less-than-stellar performance before the arbitral tribunal did not cause
10 Cecala's litigation loss, then, *a fortiori*, Cooperman Levitt's failure to prevent Newman from
11 becoming romantically attached to his client, and failure to heed the various "warning signs"
12 suggesting that Newman was not competent to represent Cecala in a Title VII case governed
13 by Fourth Circuit precedent did not cause the loss, either.

14   The total sum of the evidence in this case, whether direct or circumstantial, does not
15 provide a reasonable basis for a fair-minded jury to conclude that Cecala *should* have won
16 her case if Cooperman Levitt had prevented Newman from representing her in the first
17 instance. Summary judgment is proper on the claim of negligent supervision because, having
18 pierced the pleadings and the conclusions of Cecala's experts that assumed the truth of those
19 pleadings, there was no genuine need for trial. Fed. R. Civ. P. 56.

20 **IV.    Summary Judgment on Negligent Failure to Plead Retaliation Is Also Warranted**
21   The court's ruling on the issue of Newman's negligent "failure to plead" retaliation
22 may be summarized as follows. Cecala had a prima facie case for Title VII retaliation
23 against NationsBank, at least as to her contentions that NationsBank "froze [her] out of the
24 workplace" for approximately two weeks. (Doc. # 254 at 60.) Newman failed to assert that
25 claim. However, any damages from the Bank's retaliatory adverse employment action were
26 cut off by Cecala's voluntarily resignation in March 1997. (*Id.*) Because she cannot make
27 a case for constructive discharge under the applicable law, and because even if she was fired
28 she announced her intention not to mitigate her damages during the arbitration proceeding,

1 Cecala would have been entitled to little more than nominal damages on her untried claim. Cecala did not suffer economic injury worthy of the expense of litigation in the underlying action. Therefore, summary judgment is appropriate because the loss of an opportunity to assert a theoretically viable but economically futile claim falls short of the damages required by settled malpractice doctrine. *Reed v. Mitchell & Timbanard, P.C.*, 183 Ariz. 313, 318, 903 P.2d 621, 626 (Ct. App. 1995); *McKnight v. Dean*, 270 F.3d 513, 519 (7th Cir. 2001); *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 395-96 (S.D.N.Y. 2000). Omitting a claim for which the recovery could not match the expense of litigation cannot be negligence–nor could there be any net damage from it.

Newman put Cecala to her proof on the issue of compensable damages from retaliation in his fresh motion for summary judgment. (Doc. # 228 at 7-12.) Cecala responds with two arguments going to the economic viability of the omitted claim.[5] First, she argues that back pay was not foreclosed by her voluntary resignation, and the court's conclusion to the contrary was based on errors of law and a misreading of the evidence. Next, Cecala contends that her stand-alone claim for Title VII retaliation was economically viable because of the possibility of attorney and forum fee recovery under the applicable NASD rules. These arguments lack merit.

---

[5]The court need not address Cecala's contention that Newman failed to meet his Rule 56 burden of production regarding the lack of proof of compensable injury. (Doc. # 283 at 9-10.) The parties briefed and argued this issue during the original summary judgement proceedings. (Doc. ## 229, 237) Even if Cecala could claim that she did not receive "fair notice of the bases on which summary judgment was granted," which she can not, any remaining objection has been cured by these Rule 59 proceedings. In his fresh motion for summary judgment, Newman argues that Cecala's "potential recovery for her putative retaliation claim would have been dwarfed by the cost to achieve it." (Doc. # 288 at 7.) Cecala responded to this assertion with additional evidence that she claims is sufficient to create a triable issue of fact. The issue of compensable injury from the omitted claim is now properly before the court in a summary judgment posture.

- 10 -

### A. Insufficient Evidence of Retaliatory Adverse Employment Action

Cecala avers that the court failed to consider a variety of retaliatory adverse employment actions. Most of the evidence proffered by Cecala in support of her Rule 59 motion is insufficient as a matter of law. Each of Cecala's arguments is addressed below.

First, Cecala contends that she was promised a $10,000 pay increase, and that the promise was not fulfilled for retaliatory reasons. (Doc. # 301 at 8 (Cecala's arbitration testimony, doc. # 246 Ex. 5 at 156-57); *cf.* RC-00986 (Bill Hodges' arbitration testimony that there was no such promise).) Cecala fails to account for the fact, however, that on February 21, 1997, Bill Hodges offered to increase Cecala's pay by the "promised" $10,000 (RC 00988-99), placing her at the exact same level of pay as Jim Sherrill, an alleged male comparator with superior experience and education. Cecala did not accept the offer but instead chose to resign approximately two weeks later. This is not a "tangible adverse employment action" cognizable under Title VII.

Next, Cecala asserts that NationsBank retaliated against her by assigning her a "rehire status" of "conditional" after her resignation. (Doc. # 301 at 8.) This, too, is unavailing. The documentary evidence, a printout entitled "Existing Employee Maintenance" showing the letter "c" next to the phrase "Eleg Rehire," would not allow a fair-minded jury to conclude that NationsBank retaliated against Cecala and that a tangible harm resulted.

The 1996 NationsBank documents in which Cecala's work is highly praised (doc. # 301 at 8) are of no probative value. In March 1997, Cecala's colleagues tried unsuccessfully to persuade her to stay at NationsBank. Cecala instead chose to resign. This is not evidence of retaliation.

Finally, Cecala contends that she "experienced a quid pro quo when she was denied a job in Commercial Real Estate which resulted also in her having to be transferred to the sales desk." (*Id.* at 9.) This is insufficient because Cecala *asked* to be transferred to the sales desk (RC-00297-98), and she offers no evidence that she suffered any tangible economic harm from the alleged denial of a job in commercial real estate. A claim for retaliation may not be maintained on those facts.

- 11 -

### B. Cecala Would Be Entitled to Nominal Damages Only

In its May 2, 2007 Order, the court held that Cecala's allegation of significantly diminished workplace responsibilities made a prima facie case for retaliation. (Doc. # 254 at 60.) Cecala buttresses her claim for Title VII retaliation in her Rule 59 papers by alleging that NationsBank sent negative references to other financial institutions, and then lied to her to "keep her from beginning a job search." (Doc. # 301 at 8-9.) She subsequently avers that she "interviewed with every major investment bank and several national companies in 1997 and 1998, but was never actually offered employment." (*Id.* at 9.) The court will assume for the purpose of argument that these allegations, though speculative and based on inconclusive documentary evidence, are sufficient for Title VII retaliation.

Once again, however, this is not the end of the analysis. Cecala may not maintain a malpractice action on the basis of the foregoing because she would be entitled to little more than nominal damages. The damages from the retaliatory workplace ostracism were short-lived. Cecala testified that she had "nothing to do" for only two weeks before she voluntarily resigned in March 1997. Back pay is unavailable as a matter of law because Cecala failed to mitigate her damages after her resignation, 42 U.S.C. § 2000e-5(g)(1), and the doctrine of constructive discharge does not apply.

#### 1. Failure to Mitigate

During the NationsBank arbitration, Cecala testified that she would not consider working for Goldman Sachs if they did not increase her compensation above that paid to her by NationsBank:

> [T]hey said yes, we [really] want you to join [Goldman Sachs]. . . . [but] they made the *compensation offer at the level that I got paid previously*. . . . [W]hen we had the discussion about compensation, I had such strong feelings of what happened to me at NationsBank. I felt very taken advantage of. I felt mistreated. And I felt like if you did nothing else, [] at least compensate me fairly for what I contributed, and that didn't happen . . . . [Goldman Sachs was not] willing to make up the difference . . . [and] it was a further punishment for me. . . . *To this day, [Goldman Sachs has] invited me to work on whatever basis*–they know I'm self-employed–[i]f I want to work on deals or what have you . . . . I'm not going to kid anybody–that was a huge possibility for me. *But I felt like after what had just happened, I wasn't going to go in with that understanding, that I was going to be paid below . . . what I was worth*. I just felt like I'd had enough.

- 12 -

(RC-00748-49, 00755 (emphasis added).)

Cecala's own testimony establishes that she would not have accepted a position at Goldman Sachs *or at any other company*, even if such a "huge possibility" were offered to her, unless her salary and bonus exceeded the compensation that she received at NationsBank. (*Id.*) Cecala is convinced that she was underpaid by NationsBank. After ten years of litigation, she still cannot substantiate this conviction. There is nothing in the underlying arbitration record, the first summary judgment record, or this record, to suggest that Cecala was entitled to anything more than NationsBank actually paid her. There is simply no objective evidence to support Cecala's subjective assessment of her own market value. Undeterred by an unbroken string of litigation losses, Cecala maintains that NationsBank has by various means prevented her from obtaining the compensation that she alone believes that she is entitled to. This is not actionable retaliation. Cecala's refusal to consider any job opportunity that did not meet her subjective expectations of "Wall Street" compensation was unreasonable as matter of law. This failure to mitigate is an absolute bar to recovery for back pay.

### 2. **No Claim for Constructive Discharge**

Cecala also believes that, contrary to the authority cited in the May 2, 2007 Order (doc. # 254 at 58-62), she could have maintained a viable claim for constructive discharge under the law of the Fourth Circuit as it stood at the close of the NASD arbitration in late 1999. (Doc. # 283 at 10-15.) After reviewing the unfocused authority and additional evidence urged by Cecala in her Rule 59 memoranda, the court once again concludes that Cecala could not make a prima facie case for constructive discharge, even when viewing all the facts in the light most favorable to her. Cecala herself testified that NationsBank tried to persuade her not to quit. (Doc. # 254 at 63 (citing arbitration testimony).) It is specifically fatal to Cecala that she makes no attempt to prove "deliberateness" or "intolerability" as required by such cases as *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995). Because Cecala cannot make a case for constructive discharge as a matter of law,

1   her voluntary resignation continues to operate as a supervening cause that limits her damages
2   to the two weeks of retaliation she testified to.  (Doc. # 254 at 60.)

### 3. Attorney and Forum Fee Recovery

Cecala finally contends that she would be entitled to more than nominal damages on her claim for retaliation because, having "prevailed" against NationsBank, she might have been able to recover attorney's fees and arbitration fees in addition to the two weeks of front pay damages. (Doc. ## 283 at 22-23; 301 at 6.)  This argument fails for three independent reasons.  First, under the applicable procedural law, NASD arbitrators have discretion to impose fees and costs based on their own assessment of the merits of the case.  Fee recovery does not necessarily follow from litigation victory.  Second, Cecala loses sight of the true nature of her hypothetical victory.  All of her substantive claims were lost.  If it had been urged, Cecala's retaliation claim could only have won her insignificant damages.  A reasonable arbitral panel would not assess all of the fees to NationsBank under this scenario. Third, even if the court were to assume that a reasonable arbitrator would have awarded Cecala some portion of the costs and all of her attorney's fees based on her winning claim, the loss of an opportunity to recover litigation expenses is not compensable in legal malpractice.  Although her attorney would be better off, the loss-shifting would not redound to Cecala's net benefit.

#### i. Forum Fees and Costs

Cecala and NationsBank incurred $41,300 of NASD forum fees and costs after 18 full days (36 half-day sessions) of arbitration.  (Doc. # 171 Ex. 14 at 3-4.)  The arbitrators determined that Cecala and Nationsbank should split these costs evenly between themselves. Cecala contends that the $26,650 assessed to her would have been imposed upon NationsBank if she had prevailed on the omitted claim for retaliation.  The applicable rules of procedure do not support this contention.

The 1999 Arbitrator's Reference Guide reproduced by Cecala in her Statement Of Facts states in relevant part: "The [NASD] panel may assess forum fees among the parties in any fashion.  In deciding how to assess forum fees among the parties, the panel might

1 consider . . . factors" such as "financial hardship," "[a]ctions by the party that may have 2 prolonged the length of the hearing," "[t]he legitimacy of arguments made or positions 3 taken," "disruptions or time delays caused during hearing sessions," and "[t]he ultimate 4 merits of the case (i.e. who prevailed or substantially prevailed." (SOF Ex. 28 at 25.) 5 Section 10205(c) of the 1997 Code of Arbitration Procedure also reproduced in Cecala's 6 Statement of Facts provides, "The arbitrators, in their award, shall determine the amount 7 chargeable to the parties as forum fees and shall determine who shall pay such forum fees. 8 . . . The arbitrators shall determine by whom [the costs and expenses of the parties and 9 arbitrator(s) which are within the scope of the agreement of the parties] shall be borne." 10 (SOF Ex. 78.)

11 The foregoing does not suggest that Cecala could have avoided her $20,650 liability 12 to the National Association of Securities Dealers if she had prevailed on a claim for 13 retaliation without economic value. To survive Newman's motion for summary judgment, 14 Cecala must offer some evidence of a lost opportunity to achieve a "favorable" result. 15 *Niehoff v. Shankman & Assoc. Legal Center, P.A.*, 2000 ME 214, 763 A.2d 121, 124 (2000). 16 That Cecala might have avoided some of her forum fee liability under Section 10205(c) of 17 the 1997 Code of Arbitration Procedure is not sufficient.

18 Indeed, the notion that the arbitrators would have assessed more than one-half the 19 forum fees against NationsBank if Cecala had achieved a trivial success on the merits is 20 entirely fanciful, when the arbitrators burdened Cecala with only one-half the forum fees 21 after she lost entirely.

22 **ii.     Attorney's Fees**

23 The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes 24 district courts to award a reasonable attorney's fee to prevailing parties in civil rights 25 litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff should 26 ordinarily recover an attorney's fee unless special circumstances would render such an award 27 unjust.") (citation and internal quotations omitted). A plaintiff may be considered a 28 "prevailing party" for attorney's fees purposes if they succeed on any significant issue in

litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433 (citation and internal quotations omitted).

As of September 28, 1999, Cecala owed Cooperman Levitt $141,691.53 of attorney's fees for Newman's services. (SOF Ex. 13.) Cecala suggests that "[p]ublic policy and Title VII jurisprudence" would require the NASD to shift this fee expenditure to NationsBank. (Doc. # 282 at 22.) The court will assume for purposes of discussion that Cecala would be considered a "prevailing party" based on the success of the omitted claim, and that she would be entitled to a reasonable attorney's fees award commensurate with that limited success under 42 U.S.C. § 1988. However, Cecala plainly would not have been awarded more than the fees commensurate with her insignificant success, as she asserts. It is more likely that she would have been awarded nothing for an insignificant success and failure on everything else. Such speculation is not the basis of legal malpractice recovery.

Moreover, speculative possibility of recovery of litigation expense does not alter the court's conclusion that it cannot be actionable negligence for a lawyer to fail to assert non-economic claims. Indeed, a lawyer would be subject to ethical censure for leading a client into major legal fee expenditure without prospect of *net* benefit to the client. In the current posture of this malpractice litigation, the omitted claim for retaliation is uneconomic. Cecala lost everything of practical value. Therefore, summary judgment is appropriate on Cecala's claim for Title VII retaliation.

IT IS THEREFORE ORDERED that Defendants David B. Newman and Cooperman Levitt Winikoff & Newman's fresh motion for summary judgment on the issues of Cooperman Levitt's negligent supervision and lawyer Newman's failure to assert a Title VII retaliation claim (doc. # 288), is granted based on the evidence in this case, including the new evidence. Plaintiff Renee Cecala's Motion for Reconsideration and Related Relief (doc. # 283) is formally denied. This order does not alter the final judgment in this case, which was entered on June 1, 2007. (Doc. # 278).

IT IS FURTHER ORDERED that Cecala's Motion for Oral Argument of Motion for Reconsideration/New Trial; and Clarification (doc. # 302) is denied.

1    IT IS FURTHER ORDERED that, pursuant to the court's August 24, 2007 Order
2 (doc. # 299), the clerk file Cecala's over-length Reply brief and Statement of Facts, together
3 with all exhibits (doc. # 300).

IT IS FURTHER ORDERED that the clerk terminate this action.

DATED this 30th day of August 2007.

_____
Neil V. Wake
United States District Judge